### Case No. 5,215.

GARCIA v. UNITED STATES.

[Hoff. Land Cas. 157.] [1]

District Court, N. D. California. June Term, 1856.

---

[1] [Reported by Hon. Ogden Hoffman, District Judge, and here reprinted by permission.]

E. L. Goold, for appellant.

William Blanding, U. S. Atty., for appellees.

Before HOFFMAN, District Judge.

In support of his claim the appellant exhibits an order of Micheltorena, dated Nov. 15th, 1844, which is as follows: "According to your memorial of the fourteenth instant, you ask for the grant of a passport to penetrate into the points of the coast on the northern line of this country, with the object of locating a tract of land of the extent of eight to nine leagues, since that which you now occupy, with your personal property, is so limited. By this order you are empowered to appear before the military commanding authority of that frontier, in order that after an examination you may proceed to your research after the tract of land you ask for as a recompense for the services rendered by you to the nation. If you should happen to select any tract of land, you are empowered to occupy it with your said property, and to take possession of it while the usual procedure is being prosecuted, presenting the requisite sketch. God and Liberty. Manuel Micheltorena. Monterey, Nov. 15th, 1844. To Don Rafael Garcia, at his Rancho."

Availing himself of the permission thus granted, the claimant appears to have selected a tract of land, and to have occupied and improved it to some extent. No steps, however, were taken by him to obtain a title until March 4th, 1846, when Garcia addressed a petition to Gov. Pico, in which, after referring to the order of Micheltorena, he solicits a grant of the land. Gov. Pio Pico, by a marginal order dated April 7th, 1845, referred the petition to the alcalde of San Rafael for the usual informe. On the twenty-ninth of April, 1846, the alcalde reported that the land did not belong to any private individual.

The foregoing constitutes all the evidence of title produced by the claimant. It is not pretended that any grant was ever issued for the land, or that any further action whatever was taken by Pio Pico on receiving the alcalde's informe. Whether he determined not to grant the land, or whether he omitted to do so in consequence of the distracted condition of public affairs, we are ignorant; one fact is clear—no grant was obtained by the claimant.

It is contended that the permission given by Micheltorena to search for a suitable tract, and to occupy it if found, "while the usual procedure is being prosecuted," gave to the claimant an equity which, when coupled with subsequent occupation, this court is bound to respect. But the permission in this case is widely different from the concessions or warrants of survey which in the Louisiana and Florida cases were held to constitute inchoate or equitable titles.

A brief reference to the mode of granting public lands in Louisiana and Florida, as compared with that established by the colonization laws, will show that the decisions applicable to inchoate titles under the former system can have no application to the present case.

In Louisiana and Florida, the granting officer, on receipt of the petition, issued a concession to the party, authorizing him to have his land surveyed by the official surveyor. If the surveyor found the land to be vacant, and that it would not interfere with the rights of others, he returned a plat or figurative plan, and the party thereupon obtained an absolute grant. The preliminary concession was, as its name imports, a grant, and usually conceded, as in Glen's Case, 13 How. [54 U. S.] 258, the land to the petitioner and his heirs. To these concessions conditions were commonly annexed, that a mill should be erected within a specified time, that the land should be cultivated, that the party should levee and ditch the river front in Lower Louisiana, etc. Where, then, a party had obtained a concession, but had omitted to procure the subsequent absolute title on the completion of the survey, the title acquired by the concession was held to be inchoate and imperfect, and the real equity of the claimant was deemed to consist in the performance of the conditions or contract specified in the concession. The implied promise or assurance contained in the concession, that the title should issue provided the party performed the conditions, was deemed obligatory on the conscience of this, as well as the former government, and the claims in such cases were confirmed.

Under the Mexican system no preliminary concession or warrant of survey issued to the party. The final and absolute title was, by the regulations of 1828, the first and only document which the petitioner received, and conditions subsequent were introduced into the final grant, by which, on their nonperformance, the estate of the grantee could be divested. A mere petition to search for land, such as that given to the present claimant, finds no place in the Mexican system; nor can a naked authority to take possession be likened to those preliminary concessions, under and on the faith of which the land was surveyed and the conditions fulfilled in Louisiana and Florida.

The application of Garcia to Micheltorena was for a passport to enable him to search for land. In granting this, and also the permission to put his cattle upon the tract he might select, Micheltorena in no respect bound himself or his successors to issue a final title. Such seems to have been the view of Pio Pico and the claimant himself, for a petition, accompanied by the usual diseño, is formally presented to that officer and by him referred for information as in other cases.

Had the order of Micheltorena contained any

words which might be construed to import a present grant, the case might be different. But none such are to be found. If this claim is to be confirmed, every provisional license or permission temporarily to occupy land must be held to constitute an equitable title, provided the claimant has availed himself of the permission—a ruling which would astonish no one more than the old inhabitants of the country, by whom the importance of obtaining a "title" from the governor was well understood. For aught we know, Pio Pico, when the petition was subsequently presented, found it inexpedient to grant the land; and if the claimant, under a mere permission to occupy it with his cattle, has a house upon it, and for two years omitted any effort to procure a title, he must attribute the loss of the land to his own neglect.

Such was the view taken of this claim by the board, by whom it was unanimously rejected, and in that decision I concur.